# United States District Court
# Central District of California

UNITED STATES OF AMERICA and STATE OF CALIFORNIA, *ex rel.* ANGELA NIAZI,

        Plaintiff/Relator,

v.

CVS PHARMACY, INC.,

        Defendant.

Case № 2:15-CV-05518-ODW-FFM

**ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION TO DISMISS [56]**

## I. INTRODUCTION

Pending before the Court is Defendant CVS Pharmacy, Inc.'s Motion to Dismiss Relator Angela Niazi's Second Amended Complaint ("SAC"). (Mot., ECF No. 56.) After considering the papers filed in support of, and in opposition to, the instant Motion, the Court finds this matter appropriate for resolution without oral argument of counsel. *See* Fed. R. Civ. P. 78; C.D. Cal. L.R. 7-15. For the reasons set forth below, the Court **GRANTS IN PART** and **DENIES IN PART** CVS's Motion.

## II. FACTUAL BACKGROUND

On July 21, 2015, Niazi filed this qui tam action on behalf of the United States and the State of California, alleging that her former employer, CVS, violated the False Claims Act ("FCA") and California's statutory equivalent. (Compl., ECF No. 1.)

Niazi's operative pleading is her SAC, in which she alleges that CVS defrauded, and continues to defraud, the Government by dispensing a variety of over-the-counter ("OTC") drugs, and overcharging the Government by requesting reimbursement for more expensive medicines. (SAC ¶ 2, ECF No. 34.)

Niazi was employed as a pharmacist at several CVS pharmacies in Orange County, California. (*Id.* ¶ 10.) She alleges that CVS engages in a scheme whereby once the OTC version of a drug is introduced to the market, CVS dispenses its customers that OTC medication, but continues to bill the Government for the prescription version of the drug. (*Id.* ¶ 36.) CVS does this to increase the amount of reimbursement under the Government-funded programs. (*Id.* ¶ 36.) According to Niazi, CVS would also sometimes conduct the same scheme where both the dispensed and billed-for drugs were OTC drugs—i.e., bill for the most expensive OTC version of the drug, while dispensing the least expensive version of that drug. (*Id.* ¶ 37.) Niazi specifically alleges that CVS has operated this scheme with drugs that offer OTC versions, such as the generic versions of Zantac, Pepcid, Prilosec, Allegra, Claritin, Zyrtec, Nexium, Nicotrol, and Oxytrol. (*Id.* ¶ 38.) Niazi also alleges various specific incidences where she witnessed CVS billing for a version of a drug that was not actually dispensed. (*Id.* ¶¶ 43–50.)

The United States and the State of California elected not to intervene in this case. (ECF No. 17.) CVS now moves to dismiss the SAC, arguing that the public disclosure bar warrants dismissal of the case and that Niazi fails to state a claim under the heightened pleading standard in Federal Rule of Civil Procedure 9(b). (ECF No. 56.)

### III. LEGAL STANDARD

**A. Public Disclosure Bar**

The public disclosure bar to the FCA provides that a:
> Court shall dismiss an action or claim . . . unless opposed by the Government, if substantially the same allegations or transactions as alleged in the action or claim were publicly

> disclosed (i) in a Federal criminal, civil, or administrative hearing in which the Government or its agent is a party; (ii) in a congressional, Government Accountability Office, or other Federal report, hearing, audit, or investigation; or (iii) from the news media, unless the action is brought by the Attorney General or the person bringing the action is an original source of the information.

31 U.S.C. § 3730(e)(4)(A). An "original source" is "an individual who either (1) prior to a public disclosure under subsection (e)(4)(a), has voluntarily disclosed to the Government the information on which allegations or transactions in a claim are based or (2) who has knowledge that is independent of and materially adds to the publicly disclosed allegations or transactions, and who has voluntary provided the information to the Government before filing an action." 31 U.S.C. § 3730(e)(4)(B).

The public disclosure bar, if applicable, requires dismissal under Federal Rule of Civil Procedure 12(b)(6). *See Prather v. AT&T, Inc.*, 847 F.3d 1097, 1102 (9th Cir. 2017) (citing *United States ex rel. Osheroff v. Humana, Inc.*, 776 F.3d 805, 810 (11th Cir. 2015)). To survive a motion to dismiss under Rule 12(b)(6), a plaintiff must plead facts sufficient to "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 677–78 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A court is generally limited to the pleadings and must construe all "factual allegations set forth in the complaint . . . as true and . . . in the light most favorable" to the plaintiff. *Lee v. City of Los Angeles*, 250 F.3d 668, 688 (9th Cir. 2001). But a court need not blindly accept conclusory allegations, unwarranted deductions of fact, and unreasonable inferences. *Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001). The court must dismiss a complaint that does not assert a cognizable legal theory or fails to plead sufficient facts to support an otherwise cognizable legal theory. Fed. R. Civ. P. 12(b)(6); *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1990).

**B.    Rule 9(b)**

Where, as here, the plaintiff's claim sounds in fraud, the complaint must comply with Federal Rule of Civil Procedure 9(b)'s heightened pleading standard. *Mendiondo v. Centinela Hosp. Med. Ctr.*, 521 F.3d 1097, 1103 (9th Cir. 2008); *Bly-Magee v. California*, 236 F.3d 1014, 1018 (9th Cir. 2001). Rule 9(b) requires the party alleging fraud to "state with particularity the circumstances constituting fraud," Fed. R. Civ. P. 9(b), including "the who, what, when, where, and how of the misconduct charged." *Ebeid ex rel. United States v. Lungwitz*, 616 F.3d 993, 998 (9th Cir. 2010) (internal quotation marks omitted); *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1106 (9th Cir. 2003). "In addition, the plaintiff must set forth what is false or misleading about a statement, and why it is false." *Ebeid*, 616 F.3d at 998 (citations, brackets, and internal quotation marks omitted). "Rule 9(b) serves to give defendants adequate notice to allow them to defend against the charge and to deter the filing of complaints as a pretext for the discovery of unknown wrongs, to protect professionals from the harm that comes from being subject to fraud charges, and to prohibit plaintiffs from unilaterally imposing upon the court, the parties and society enormous social and economic costs absent some factual basis." *In re Stac Elecs. Sec. Litig.*, 89 F.3d 1399, 1405 (9th Cir. 1996) (citations, brackets, and internal quotation marks omitted).

## IV.    DISCUSSION

CVS moves to dismiss Niazi's SAC arguing that the public disclosure bar of the FCA applies and that Niazi has failed to satisfy the pleading requirements of Rule 9(b.) CVS asserts that the public disclosure bar is triggered here by an earlier qui tam lawsuit filed against CVS and its subsidiary company, Longs Drug Store, by a former Longs Drugs' employee, Haroon Aziz, *United States, et al. ex rel. Haroon Aziz v. CVS Corp., et al.*, No. C 09-1372 CRB (N.D. Cal. 2009) (the "Aziz Action"). (Mot. 4.) To determine whether the public disclosure bar applies, the Court must first consider whether the Aziz Action qualifies as a public disclosure under 31 U.S.C.

§ 3730(e)(4)(A). If the Court answers that question in the affirmative, then it must consider whether Niazi qualifies under the "original source" exception and may, therefore, proceed with her claim. The Court addresses each of CVS's arguments in turn below.

**A.      Requests for Judicial Notice**

The Court first turns to the parties' various requests for judicial notice. Both parties request that the Court take notice of a number of documents outside the pleadings, mostly related to the Aziz Action. While a district court generally may not consider any material beyond the pleadings in ruling on a Rule 12(b)(6) motion, a court may consider any documents referenced in the complaint, and may take judicial notice of matters in the public record, without converting a motion to dismiss into one for summary judgment. *See Lee*, 250 F.3d at 688–89.

CVS requests the Court to take judicial notice of:

Exhibit 1:   The First Amended Complaint in the Aziz Action;

Exhibit 2:   The United States' Notice of Election to Decline Intervention and accompanying order from the Aziz Action; and

Exhibit 3:   The Corporate Integrity Agreement Between the Office of Inspector General of the Department of Health and Human Services and CVS. (Req. for Jud. Not., ECF No. 58)

Exhibits 1 and 2 are appropriate for judicial notice as they are public court filings, and neither party questions the authenticity of those documents. Exhibit 3 is also appropriate for judicial notice because it was incorporated by reference into Niazi's SAC, as she relies on that document as the basis of her reverse FCA claim. "Even if a document is not attached to a complaint, it may be incorporated by reference into a complaint if the plaintiff refers extensively to the document or the document forms the basis of the plaintiff's claims. *U.S. v. Ritchie*, 342 F.3d 903, 908 (9th Cir. 2003). If that is the case, "the defendant may offer such a document, and the district court may treat such document as part of the complaint, and thus may assume

that its contents are true for purposes of a motion to dismiss under Rule 12(b)(6)." *Id.* For these reasons, the Court takes judicial notice of CVS's Exhibits 1, 2, and 3.

Additionally, although she does not explicitly ask the Court to take judicial notice, Niazi cites to two declarations—including her own—and one exhibit in support of her opposition to CVS's Motion. (ECF Nos. 63-1, 63-2, 63-3.) CVS objects to Niazi's reliance on her own declaration, arguing that at the motion-to-dismiss stage the Court must rely solely on the pleadings and documents subject to judicial notice. The Court agrees and declines to rely on any of the assertions made in Niazi's declaration. The Court finds that the sole exhibit attached to Niazi's Opposition—a copy of the Stipulation of Dismissal in the Aziz Action—is appropriate for judicial notice for the same reason as described above for CVS's Exhibits 1 and 2.

**B.     FCA Public Disclosure Bar**

  *1.     Whether the Aziz Action Qualifies as a Public Disclosure*

CVS contends that this case must be dismissed because it is barred by the previous public disclosure in the Aziz Action that concerned substantially the same allegations as those Niazi makes here. (Mot. 5.) The parties does not dispute that the allegations in Aziz were actually public; rather, they dispute whether the allegations in that case were substantially similar to Niazi's allegations so as to trigger the public disclosure bar.

In the prior action, Aziz sued Longs Drugs, his former employer, and CVS, who purchased Longs Drugs after Aziz was terminated, alleging that Longs Drugs submitted false claims by dispensing its own brand of OTC medications yet billing California Medicaid for a different manufacturer's medicine. (Decl. of Daniel M. Dockery Ex. 1 ("Aziz Compl.") ¶ 40, ECF No. 56-2.) Sometimes the medicine Longs Drugs dispensed was not covered at all by the relevant plan, and sometimes the drug had a lesser reimbursement amount than the drug billed. (*Id.*) The result, Aziz alleged, was that Longs Drugs was reimbursed more than what it would have been had it billed for the drug actually dispensed. (*Id.*)

Both parties cite the Ninth Circuit's decision in *Mateski* in support of their argument as to what constitutes "substantial similarity" for the purpose of the public disclosure bar. *See United States ex rel. Mateski v. Raytheon Co.*, 816 F.3d 565 (9th Cir. 2016). In *Mateski*, the Ninth Circuit clarified that if some fraud is previously disclosed at the highest level of generality, it cannot wipe out a later-filed qui tam action. *See id.* at 577. Previous public disclosures of "delays and incompetence" in the performance of a government contract were too generalized to bar a later qui tam suit that alleged specific instances of fraudulent billing. *Id.* at 571.

*Mateski* is distinguishable from the present case because the allegations in the Aziz Action were not the same type of "generalized" grievances "across a swath of an industry" that concerned the Ninth Circuit. *See id.* at 577. Additionally, unlike the public disclosure at issue in *Mateski*, reports of various problems and delays on a government-funded project, Aziz made specific allegations of fraud. *See id.* at 571. Indeed, Aziz alleged the same type of fraud Niazi complains of here, that CVS (through its subsidiary Longs Drugs), wrongfully overbilled the Government by misrepresenting the version of OTC drugs it had dispensed.

Additionally, Niazi argues that allegations in the Aziz Action are not substantially similar to Niazi's because:

(1) Aziz only alleged that Longs Drugs dispensed OTC drugs from un-authorized manufacturers, and billed for approved manufacturers, whereas Niazi alleges a scheme whereby CVS dispenses OTC drugs and bills for prescriptions versions of those drugs;

(2) The Aziz Action involved the actions of Longs Drugs, not CVS;

(3) Aziz's allegations concerned different store locations;

(4) The Aziz Action settled in 2012, but Niazi alleges that CVS's fraud continued through 2017; and

(5) Niazi names more specific examples of drugs involved in CVS's fraudulent scheme.

(Opp'n 8, ECF No. 63.) The Court finds that the allegations in the Aziz Action and those in the present case are substantially similar, despite these slight differences. *See Mateski*, 816 F.3d at 573 (explaining that to be precluded under the public disclosure bar, "the publicly disclosed facts need not be identical with, but only substantially similar to, the relator's allegations.") (citation omitted).

First, although Niazi's SAC includes an allegation not contained in Aziz's complaint; namely, that CVS sometimes billed for prescription drugs when dispensing OTC drugs, there can be no dispute that Aziz and Niazi both alleged the same scheme regarding billing and dispensing different OTC drugs. (*Compare* Aziz Compl. ¶ 40, *with* SAC ¶ 3 ("CVS began to operate this scheme by dispensing the [OTC] version to the customer but billing for the costlier prescription *or another [OTC] version*.").) For this particular issue, the allegations between the two complaints are not just "substantially similar," but nearly identical. As to Niazi's additional claim regarding billing for prescription drugs, the Court finds that this allegation is substantially similar to the allegations Aziz made to qualify as a previous public disclosure. As the Ninth Circuit explained, "[f]or purposes of the public disclosure bar, we have held that the substance of the disclosure . . . need not contain an explicit allegation of fraud, so long as the material elements of the allegedly fraudulent transaction are disclosed in the public domain." *Mateski*, 816 F.3d at 571. The Aziz Action not only contained an explicit allegation of fraud, but also provided the accompanying material elements: CVS would bill for drugs covered by the relevant plan, yet dispense an OTC version that was either not covered or subject to a lower reimbursement rate.

Niazi's second and third arguments center on the point that Aziz's complaint was based on observations he made at Longs Drugs', and not at CVS's, stores. Aziz's allegations, however, were not limited to the Longs Drugs' stores where he worked. (Aziz Compl. ¶ 50 (alleging that Aziz was told that the illegal practices he observed were the general policies of Longs Drugs and that the practices were widely known within the company).) Niazi also argues that Aziz's allegations cannot bar her lawsuit

against CVS, because CVS was named in the Aziz Action only as a successor-in-interest. The scope of the allegations Aziz made against CVS, however, were not so limited. Aziz alleged that the fraudulent billing he observed continued after he was terminated by Longs Drugs in 2008 and after CVS acquired the company. (Aziz Compl. ¶¶ 52, 67.)

Niazi also argues that the variance in the timing of Niazi's allegations, i.e. CVS's wrongful conduct occurring after the Aziz Action settled and continuing through 2017, makes the two actions dissimilar. The Court disagrees. The only case Niazi cites for the proposition that the timing of allegations can result in pleadings being not substantially similar, *Leveski v. ITT Educational Services, Inc.*, 719 F.3d 818, 829–32 (7th Cir. 2013), is distinguishable on the facts. In *Leveski*, the Seventh Circuit found that a relator's case was not barred by an earlier publicly filed complaint because both complaints alleged that the defendant violated the incentive compensation provision of the Higher Education Act. *Id.* at 832. The court found that:

> [t]he details of how [defendant] allegedly violated the [Act] are quite different in [the second relator's] case than they were in [the first]. Unlike [the first relators], who alleged a more rudimentary scheme by [defendant] to violate the [Act's] incentive compensation provision, [the second relator] alleges a more sophisticated, second-generation method of violating the [Act].

*Id.* This is not the situation here. What Niazi alleges sounds more like a continuation of the same type of practices alleged by Aziz, rather than "more sophisticated, second generation method" of the scheme. However, as explained further below, the Court finds that the difference in the time-frames of the allegations supports the conclusion that Niazi qualifies as an "original source."

Lastly, Niazi argues that her claims are not barred because she provides examples of fraudulent billing with specific drugs not mentioned in Aziz's complaint. As CVS points out, however, neither Aziz nor Niazi limited their allegations to

specific drugs; rather, they cite activities involving certain drugs only as examples. (Reply 4, ECF No. 64.) The result of the alleged fraud is the same: CVS received a higher rate of reimbursement from the Government for dispensing cheaper OTC drugs and billing for more expensive drugs. Therefore, the allegations in the Aziz Action are "substantially similar" to the allegations Niazi makes in this case.

For these reasons, the Court finds that the Aziz Action qualifies as a substantially similar public disclosure under 31 U.S.C. § 3730(e)(4)(A).

*2. Whether Niazi Qualifies as an "Original Source"*

Niazi contends that she is an original source, because, as a former CVS employee, she has independent and direct knowledge of CVS's fraud that materially adds to the allegations made in the Aziz Action. Both parties agree that this question hinges on whether Niazi's claims "materially add" to allegations Aziz made previously.

Niazi argues that she "materially adds" to Aziz's allegations, because she alleges that the fraud continued after the Aziz Action was dismissed and she cites specific examples of overbilling for drugs not named in Aziz's complaint. (Opp'n 14–16.) The Court agrees. Niazi not only alleges that CVS overbilled the Government by dispensing and billing for different OTC drugs; she also alleges that CVS engaged in this scheme using prescription versions of drugs that had comparable OTC versions. (SAC ¶ 3.) Additionally, Niazi alleges that the fraud continued after the Aziz Action settled[1] and names a number of different drugs involved in the fraud.[2] (*Id.* ¶¶ 38–52.) These allegations, considered together, "materially add" to those made in the Aziz Action. Therefore, Niazi qualifies as an original source.

---

[1] The Aziz Action settled in 2012, and Niazi alleges several specific examples of the fraudulent conduct occurring between 2013–2015. (*Compare* Decl. of Raphael Katz Ex. 1, ECF No. 63-1, *with* SAC ¶¶ 43, 45, 46, 48.)

[2] The only drugs Aziz specifically referenced in connection with the fraud he alleged were Tylenol and its generic equivalent, acetaminophen. (Aziz Compl. ¶ 40.)

For the foregoing reasons, the Court **DENIES** CVS's Motion to the extent it argues that Niazi's claims are precluded by the public disclosure bar.

**C.     Rule 9(b)**

CVS argues that Niazi's allegations do not satisfy the heightened pleading standard for fraud, because she identifies only "seven occasions during a seven-year period in which store-level pharmacists or technicians allegedly dispensed a chemically equivalent drug bearing a different NDC to fulfill an already-billed prescription" and she "did not plead the name of the employee allegedly involved." (Mot. 13.) According to CVS, Niazi does not allege with particularity any scheme attributable to CVS to connect these events and "create a 'plausible inference' that they reflect anything more than allegations of isolated conduct by low-level employees." (*Id.*) The Court disagrees.

Niazi alleges that CVS engaged in a scheme to increase its profits by overbilling the Government for the drugs it dispensed, sometimes billing for the prescription version of a drug and dispensing the OTC version, and sometimes billing for a more expensive OTC drug, while dispensing a cheaper OTC version of the same drug. (SAC ¶¶ 36, 37.) She alleges that CVS employees intentionally entered the different identification numbers for the dispensed/billed-for drugs into their computer system and then manually overrode the red-flag alert caused by the discrepancy. (*Id.* ¶ 41.) According to Niazi, pharmacists were also directed to obscure the description on the prescription label so the patient could not self-verify the dispensed drug with the prescribed drug. (*Id.* ¶ 47.) CVS employees then manually adjusted the inventory count to hide the disparity in inventory levels for the drugs. (*Id.* ¶ 42.) With these allegations, Niazi provides the "the who, what, when, where, and how" of the misconduct and has met her burden to plead fraud with particularity. *Lungwitz,* 616 F.3d at 998. Therefore, the Court **DENIES** CVS's Motions on this ground.

### D. Niazi's Reverse FCA Claim

In addition to her claims that CVS affirmatively submitted false statements to the Government, Niazi alleges that CVS committed reverse FCA violations because it violated a Corporate Integrity Agreement ("CIA") with the Government by "failing to return overpayments secured with the above-described fraudulent scheme and by [failing] to pay penalties for its violations of the CIA." (SAC ¶ 72.) CVS entered into the CIA as part of a settlement in an unrelated case in the Northern District of Illinois. (*Id.* ¶ 55.) CVS also violated the CIA by failing to properly train its employees regarding drug dispensing policies. (*Id.* ¶ 59.)

A reverse false claim occurs when a defendant "knowingly conceals or knowingly and improperly avoids or decreases an obligation to pay or transmit money or property to the Government." 31 U.S.C. § 3729(a)(1)(G). CVS attacks Niazi's allegations on this claim by arguing that (1) Niazi cannot maintain a reverse FCA claim on the basis of violations of a CIA and (2) Niazi has not pleaded this claim with particularity. (Mot. 16–18.)

The Court agrees with CVS that a plaintiff cannot succeed on a reverse FCA claim by merely alleging that the defendant violated a settlement agreement in an unrelated case. Instead, there must be some allegation of a knowing and improper failure to pay money to the Government that the defendant is obligated to pay. Therefore, Niazi's allegations regarding CVS's failure to train its employees and institute drug dispensing policies cannot support her claim, because they are not connected to a failure to pay. CVS also attacks Niazi's allegations that CVS committed a reverse FCA violation by failing to pay the stipulated civil penalties provided for in the CIA for CVS's violations of that agreement. This allegation also falls short, because a failure to pay penalties that, to be enforced, would require exercise of Government discretion cannot support a reverse FCA claim. *See United States v. Astrazaneca v. Biopharmaceuticals*, No. 14-1718, 2017 WL 1378128, at *3 (E.D.N.Y. Apr. 17, 2017) (dismissing reverse FCA claim because "stipulated

penalties are not an *obligation* owed to the federal government[, because t]hey are not automatically imposed; rather the government must choose to impose stipulated penalties and defendants may appeal such imposition with an administrative law judge.") (emphasis in original).

Niazi appears to now limit her reverse FCA claim solely to her allegation that CVS failed to repay all of the overpayments it received from the Government, which violates the CIA. (Opp'n 21.) This claim, in theory, could survive the pleading stage. *United States ex rel. Matheny v. Medco Health Solutions, Inc.*, 671 F.3d 1217, 1224 (11th Cir. 2012) (finding that plaintiff stated a reverse FCA claim by alleging defendant failed to repay overpayments in connection with a CIA). However, as CVS points out, Niazi fails to provide any facts to support her allegation that CVS has not repaid the overpayments. (Reply 11.) For that reason, the Court finds that Niazi has not stated a reverse FCA claim.

The Court **GRANTS** CVS's Motion to Dismiss on the grounds that Niazi has not stated a reverse FCA claim.

**E. Leave to Amend**

Because Niazi could cure the deficiencies described above through amendment, the Court **GRANTS** Niazi leave to amend her SAC.

///
///
///
///
///
///
///
///
///

## V. CONCLUSION

For the foregoing reasons, the Court **GRANTS IN PART** and **DENIES IN PART** CVS's Motion to Dismiss (ECF No. 56). Should Niazi choose to amend her complaint, she must do so within twenty-one (21) days of this order.

**IT IS SO ORDERED.**

January 31, 2018

_____
**OTIS D. WRIGHT, II
UNITED STATES DISTRICT JUDGE**